Filed 3/28/24  P. v. Medina CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>          v.<br><br>TOMMY MEDINA,<br><br>    Defendant and Appellant. | F086313<br><br>(Super. Ct. No. 21CMS6109)<br><br><br>**OPINION** |

-ooOoo-

**THE COURT**[*]

APPEAL from a judgment of the Superior Court of Kings County.  Kathy Ciuffini, Judge.

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P. J., Detjen, J. and Smith, J.

Counsel for defendant, Tommy Medina, submitted a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), asking this court to conduct an independent review of the record on appeal.  We offered defendant the opportunity to present his own brief by way of a letter.  Defendant submitted a letter in response for this court to consider.

Pursuant to *Wende*, *supra*, 25 Cal.3d 436 and *People v. Kelly* (2006) 40 Cal.4th 106, we have reviewed the entire record.  Consistent with our Supreme Court's direction in *Kelly*, we provide a description of the relevant facts and the procedural history of this case.  (*Kelly*, at p. 110.)  Finding no arguable error that would result in a disposition more favorable to defendant, we affirm.

## PROCEDURAL SUMMARY

In March 2023, the Kings County District Attorney filed a second amended information charging defendant with nine counts of committing lewd and lascivious acts on a child under the age of 14 years (Pen. Code,[1] § 288, subd. (a), all felonies; counts 1–5, 12–15), and six counts of forceable rape (§ 261, subd. (a)(2), all felonies; counts 6–11). The amended information also included a special allegation, applicable to all counts, that defendant committed the alleged offenses against more than one victim.  (§ 667.61, subds. (b), (c), (e).)

After waiving a preliminary hearing, defendant was tried by a jury in March 2023. The jury reached a verdict of guilty on all 15 counts brought against defendant, and, except for count 4, also found true the special allegation that defendant committed these crimes against more than one victim.

On April 13, 2023, defendant received consecutive sentences of 15 years to life for counts 1 through 3 and counts 5 through 15.  Defendant was also given a sentence of six years for count 4.  The trial court stayed the sentences in counts 1, 2, and 9 pursuant

---

[1]     All further statutory references are to the Penal Code.

to section 654.  The total sentence defendant ultimately received was six years plus 165 years to life.  A timely notice of appeal was filed thereafter on behalf of defendant.

## FACTUAL SUMMARY

All 15 counts alleged crimes involving victims who were defendant's daughters. P.M. was the victim of the crimes alleged in counts 1 through 8, while M.M. was the victim in counts 9 through 13, and C.M. was the victim in counts 14 and 15.

During the early morning hours of December 25, 2021, P.M. and M.M.'s maternal aunt learned P.M. and M.M. were being abused and molested by their father.  After confirming this information with M.M. later in the day, the aunt contacted child protective services and sent a message to P.M. and M.M.'s mother, M.B., asking her to stop by the house to pick up some presents for her daughters.[2]

When M.B. arrived at her sister's house, M.M. handed her a letter she had written. M.B. read the first line of the letter, crumpled it up, and "threw it."  M.B. then left to go pick up her other two daughters, P.M. and E.M., who were with defendant at their paternal grandmother's house, because she "didn't want them around him."  When she arrived at the grandmother's house, M.B. told defendant she was there to pick up her daughters because M.B.'s grandfather was sick.  M.B. made this statement to defendant because she was afraid of his reaction if she revealed what she had learned and wanted to get her daughters out of the house.

P.M. started her testimony by describing the events of Christmas day 2021, when she received a smart watch from defendant.  P.M. stated defendant always wanted something in return when he would buy her a gift.  On this day, defendant texted P.M. to come to his room.  Once P.M. arrived, defendant locked the door and removed her clothes.  Although P.M. told him to stop, defendant held her down and engaged in an act

---

[2] M.B. was the mother of P.M. and M.M., while their half sister, C.M., had a different mother.

of sexual intercourse with her. P.M. told defendant she "was done with all of that," and tried to push him off of her. After P.M. started to cry, she got off the bed and left the room while defendant kept apologizing and trying to comfort her.

P.M.'s testimony also addressed events that occurred when she was 12 years old. P.M. described how she was swimming in an above-ground pool in their backyard when defendant touched her butt, breasts, and vaginal area. On this same day, after P.M. went into the house, defendant told her to go to his room. When she arrived, defendant told P.M. to lay on the bed and he locked the door. Defendant then pulled down her shorts, first put his mouth on her vagina, and then put his penis in her vagina. When he was done, defendant told P.M. to keep their activity a secret.

P.M. finally addressed the remaining two counts of forceable rape. Specifically, P.M. testified that in November 2021, defendant broke her phone, bought her a new one, then asked her for sex. P.M. explained that although she told defendant she "was done," he threatened to kill her, her mother, and her sisters if she did not comply. At trial, P.M. admitted some confusion over the specifics of when she and defendant eventually had sexual intercourse as a result of this incident, because he often asked or forced her to have sexual intercourse.[3] P.M. also testified to an additional incident in 2021, when defendant slapped P.M. because he was trying to have sexual intercourse with her and she kept telling him no. During this incident, defendant held P.M. down and forced her to engage in sexual intercourse.

M.M. testified that when she was 12 or 13 years old, she was watching a video on her phone. Defendant took the phone, put it down, then touched her breasts and vagina. M.M. felt disgusted and scared. When she was 15 years old, around the end of her

---

**3** We note that because a few of the counts brought against defendant contained broad timeframes, CALCRIM No. 3500 on unanimity was read to the jury before they deliberated.

freshman year in high school, M.M. described how she fell asleep in her parents' bed to wake up with defendant on top of her and felt his penis in her vagina. Defendant told M.M. to keep this incident a secret, threatening to kill her mother if she said anything. M.M. testified about two additional acts of forceable rape committed by defendant in 2021. M.M. confirmed that she wrote a letter about the abuse, which she eventually gave to her mother on Christmas day 2021.

The allegations contained in counts 14 and 15 involved lewd and lascivious acts committed by defendant on C.M. Defendant was C.M.'s father, but she did not live with him and did not have a relationship with him as a child. C.M. testified that when she was 12 years old, she wanted to develop a relationship with her biological father, but started to feel unsafe when defendant would say inappropriate things to her during their visits. C.M. also testified that during some of these visits, defendant would touch her under her shirt and under her bra. Defendant also touched C.M. under the waistband of her underwear. C.M. found this uncomfortable and it made her feel scared.

After the Christmas day events, P.M. was taken in for a forensic exam. DNA testing on a swab taken from P.M.'s external genital area found a mixture of DNA that included P.M. and defendant as likely contributors. However, the sample also included a small amount of DNA from an unknown third person. The amount of DNA from this third person was too small to make a conclusive determination whether the person was male or female.

*Defense*

Defendant testified on his own behalf. In his direct testimony, defendant denied he committed any of the acts alleged against him. Instead, defendant suggested the allegations stemmed from jealousy that he seemed to favor one daughter over another, or anger about restrictions he placed on his daughters. In response to a question about how

DNA evidence could be found on P.M., defendant offered an explanation involving rags used in the house for cleaning.

On cross-examination, defendant was asked about a variety of text messages he sent to P.M. The questioning focused on how defendant referred to P.M. and the intent behind a variety of the messages he sent.

## DISCUSSION

In response to the letter sent by this court to defendant following the *Wende* brief filed by his appellate attorney, defendant responded by suggesting his trial attorneys did not follow through by contacting witnesses he believed could benefit his defense. "On direct appeal, a conviction will be reversed for ineffective assistance [of counsel] only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) Our review of the record on appeal fails to disclose evidence supporting any of the standards set out in *Mai*.

Having carefully reviewed the entire record provided in this case, we conclude there are no arguable issues on appeal. (*Wende*, *supra*, 25 Cal.3d at pp. 441–443.)

## DISPOSITION

The judgment is affirmed.

6